IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**MONICA SAENZ**, as Personal Representative
of the Estate of JESSE SAENZ, Deceased,
                    Plaintiff,

v.                                                          **CIV-09-0030 MCA/ACT**

**THE CITY OF RATON, CHRIS EDMONSON,
LEONARD M. BACA, JR., NOLBERTO
DOMINGUEZ**, and **VINCENT MARES**,
                    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on *Defendants' Motion for Summary Judgment—Liability* [Doc 60] and *Defendants' Motion For Summary Judgment—Cause*. [Doc 61]  Having held a hearing and considered the parties' submissions, the relevant law, and otherwise being fully advised in the premises, the Court grants in part, denies in part, and defers in part *Defendants' Motion For Summary Judgment—Liability*.  [Doc 60]  The Court further defers ruling on *Defendants' Motion For Summary Judgment—Cause* [Doc 61] until such time as a hearing pursuant to Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), can be held.

## I.    BACKGROUND

The instant action arose from events that took place early in the morning on

November 18, 2007.  At approximately four a.m., a woman named Danielle was awakened by the sound of two men arguing on her porch.  Danielle observed a man, later identified as Mr. Saenz, walk through her yard and between her vehicles.  Danielle called 911 to report that there were men fighting or arguing in her yard.

Officers Baca and Dominguez, and Sergeant Edmonson (collectively, Officer Defendants) arrived on the scene separately.  Officer Baca approached Mr. Saenz and attempted to communicate with him.  Eventually, Officer Baca placed Mr. Saenz in handcuffs and led him toward a police vehicle.  Officer Dominguez spoke with Danielle and her boyfriend, until he observed that Officer Baca was having difficulty getting Mr. Saenz into the police car.  Officer Dominguez and Sergeant Edmonson joined Officer Baca, in order to attempt to place Mr. Saenz in the police vehicle.  During this time, the Officer Defendants removed Mr. Saenz's shoes, shackled his feet, and used their tasers on him.

Eventually, Mr. Saenz was placed in the back of Officer Baca's police vehicle, lying on his stomach, with his hands cuffed behind him and his ankles shackled.  Sergeant Edmonson instructed Officer Dominguez to ride in the back with Mr. Saenz.  During the approximately two-minute ride to the police station, Officer Dominguez crouched over Mr. Saenz, holding the chain that was connected to Mr. Saenz's ankles.  Mr. Saenz continued to kick his legs and shout until the vehicle had almost reached the station.  A short time after reaching the station, Mr. Saenz was pronounced dead.

Plaintiff, Mr. Saenz's sister and personal representative, filed the current cause of action against the City of Raton, the Officer Defendants, and their supervisor (collectively,

Defendants), alleging violations of  42 U.S.C. § 1983, the New Mexico Tort Claims Act (NMTCA), and Section 504 of 29 U.S.C. § 796, the Rehabilitation Act.  [See Doc 1] Defendants filed two motions for summary judgment, *Defendants' Motion For Summary Judgment—Liability* [Doc 60] and *Defendants' Motion for Summary Judgment—Cause*. [Doc 61]  On May 4, 2010, the Court convened a pretrial conference, at which the parties also presented argument relating to the motions.  [See Doc 105]

## II.   ANALYSIS

Summary judgment under Fed.R.Civ.P. 56(c) "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c)(2).  "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading. . . ."  Fed.R.Civ.P. 56(e)(2).  Instead, "its response must . . . set out specific facts showing a genuine issue for trial."  Id.  Judgment is appropriate "as a matter of law" if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In order to warrant consideration by the Court, the factual materials accompanying a motion for summary judgment must be admissible or usable at trial (although they do not necessarily need to be presented in a form admissible at trial).  See Celotex, 477 U.S. at 324. It is not the court's role, however, to weigh the evidence, assess the credibility of witnesses,

or make factual findings in ruling on a motion for summary judgment.  Rather, the Court assumes the evidence of the non-moving party to be true, resolves all doubts against the moving party, construes all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in the non-moving party's favor.  See Hunt v. Cromartie, 526 U.S. 541, 551-52 (1999).

Defendants' first motion requests summary judgment on liability for all counts of Plaintiff's complaint.  [Doc 60]  The complaint includes (1) a claim against the Officer Defendants pursuant to Section 1983 for wrongful arrest and excessive force; (2) a claim against Defendant Vincent Mares for supervisory liability under Section 1983; (3) a claim against the Officer Defendants under the NMTCA; (4) a claim against Defendant Mares under the NMTCA; (5) a claim against the City under the NMTCA; and (6) a claim against all Defendants pursuant to the Rehabilitation Act.  [See Doc 1]  The Court begins with Defendants' challenge to Plaintiff's claim against the Officer Defendants pursuant to Section 1983.

## A.    Section 1983—Individual Capacity

42 U.S.C. § 1983 provides, in relevant part, that

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Persons sued in their individual capacity under this civil-rights statute

generally are entitled to qualified immunity unless the plaintiff can establish that the defendant's actions violated a specific federal statutory or constitutional right and that the rights which they allegedly violated were clearly established at the time of the conduct at issue. See Gross v. Pirtle, 245 F.3d 1151, 1155-56 (10th Cir. 2001); Oliver v. Woods, 209 F.3d 1179, 1185 (10th Cir. 2000).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Medina v. City & County of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). But "officials can still be on notice that their conduct violates established law even in novel factual circumstances." Hope v. Pelzer, 536 U.S. 730, 741, 745 (2002); accord Holland v. Harrington, 268 F.3d 1179, 1197 (10th Cir. 2001). The "salient question" is whether the state of the law at the time of the incident gave the defendants "fair warning" that their conduct was unconstitutional. Hope, 536 U.S. at 741.

Although the qualified immunity cases previously required courts to first evaluate the right asserted and then to turn to whether the right is clearly established, the Supreme Court of the United States recently adjusted the analysis. In Pearson v. California, 129 S.Ct. 808 (2009), the Court held that the established analysis—constitutional right first, clearly established second—"should not be regarded as an inflexible requirement." Id. at 813. The Pearson Court offered many reasons for abandoning the previously mandatory order of analysis, but pertinently, "[a]dherence to [the] two-step protocol departs from the general rule

of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality . . . unless such adjudication is unavoidable." Id. at 821 (final alteration in original) (internal quotation marks and citation omitted). Thus, the order of analysis now rests in the district court's discretion. See id. (recognizing that district courts "should have the discretion to decide [which] procedure is worthwhile in particular cases"). In sum, if a plaintiff cannot show that a clearly established constitutional right was violated, the Court must grant the defendant qualified immunity. See Gross, 245 F.3d at 1156.

In the complaint, Plaintiff alleges that the Officer Defendants violated Mr. Saenz's right to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution. [Doc 1 at 10] Specifically, Plaintiff contends that the Officer Defendants had no probable cause to arrest Mr. Saenz and that the Officer Defendants applied excessive force in order to accomplish the arrest. [Doc 88 at 25-27] In *Defendants' Motion For Summary Judgment—Liability*, Defendants maintain that the Officer Defendants did not violate Mr. Saenz's clearly established constitutional rights. The Court first considers the circumstances of the arrest.

1.    **The Arrest**

The Fourth Amendment provides that

[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. It has long been recognized that "whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." Terry v. Ohio, 392 U.S. 1, 16 (1968). Thus, a person is seized within the meaning of the Fourth Amendment "when a reasonable person would have believed that he was not free to leave." Fuerschbach v. Sw. Airlines Co., 439 F.3d 1197, 1202-03 (10th Cir. 2006) (internal quotation marks and citation omitted).

Based on these long-standing principles, an arrest is considered to be "the most intrusive of Fourth Amendment seizures and reasonable only if supported by probable cause." United States v. White, 584 F.3d 935, 945 (10th Cir. 2009) (internal quotation marks and citation omitted). Arrests are distinguished from other police interactions by the "involuntary, highly intrusive nature of the encounter." Cortez v. McCauley, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks and citation omitted). "An arrest occurs when the police use a show of official authority such that a reasonable person would have believed he was not free to leave." United States v. Edwards, 242 F.3d 928, 934 (10th Cir. 2001)(internal quotation marks and citation omitted). The "use of firearms, handcuffs, and other forceful techniques generally exceed the scope of an investigative detention and enter the realm of an arrest." Cortez, at 1115-16 (internal quotation marks and citation omitted).

"When a warrantless arrest is the subject of a [Section] 1983 action, the defendant is entitled to qualified immunity if probable cause existed to arrest the plaintiff." Wilder v. Turner, 490 F.3d 810, 813 (10th Cir. 2007). "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably

trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Cortez, at 1115-16 (internal quotation marks and citation omitted). The existence of probable cause to arrest depends on the arresting officer's subjective understanding of the facts and the objective application of the law to those facts. Sherouse v. Ratchner, 573 F.3d 1055, 1059 (10th Cir. 2009). Based on these general Fourth Amendment principles, the Court must first determine at what point Mr. Saenz was under arrest and second, whether that arrest was supported by probable cause.

During his deposition, Officer Baca[1] testified that he went to the scene after being told by dispatch that there was a report of a fight. [Doc 88-4 at 5] Officer Baca stated that he approached an unknown individual, who was leaning against the deck or porch of the house located at the address given by dispatch. [Id. at 6] He further observed a person standing on the deck. [Id.] Officer Baca spoke with the individual leaning against the deck, Mr. Saenz, who was "yelling" and not making eye contact. [Id.] When Officer Baca requested that Mr. Saenz get down on all fours, Mr. Saenz went to his hands and knees and began "pulling grass up and rubbing it on his head." [Id.] Officer Baca continued to speak with Mr. Saenz, who "kept yelling, 'I don't—oh, my God, why are they doing this to me?'" [Id.] Officer Baca testified that based on his experience, he thought that Mr. Saenz was "on something." [Id.

---

[1] The parties do not dispute that Officer Baca was the arresting officer. Plaintiff asserts her Section 1983 claims against all of the Officer Defendants based on primary liability and on liability for failure to intervene. Hall v. Burke, 12 Fed.Appx. 856, 861 (10th Cir. 2001) (recognizing an "affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence"). [Doc 88 at 43-44] Defendants raise no challenge to this assertion at this time.

at 7]  Receiving no response and only strange behavior from Mr. Saenz, Officer Baca "moved in behind him, picked him up, and was able to get him handcuffed." [Id. at 6]  Mr. Saenz did not fight Officer Baca at that time.  [Id. at 6-7]  Officer Baca started walking Mr. Saenz to the police vehicle because "he was at that point under arrest." [Id. at 7]  At that point, on the way to the car, Officer Baca learned from Sergeant Edmonson and another officer[2] that the property owners wanted to file charges for damage to their property.  [Id.]

Based on the totality of these circumstances, Mr. Saenz was arrested at the time that Officer Baca "picked him up, and was able to get him handcuffed." [Id. at 6]  There is no dispute that at that time, Mr. Saenz was not free to leave, that he had been placed in restraints, and that he was being led to a squad car.  See United States v. Cooper, 733 F.2d 1360, 1363 (10th Cir. 1984) (characterizing an arrest as a "highly intrusive or lengthy search or detention").  Although during his deposition, Officer Baca later testified that he only handcuffed Mr. Saenz "to make sure that [he] had him under control," [Doc 88-4 at 7] whether an arrest has occurred is evaluated objectively, according to the totality of the circumstances.  See Galleon v. City of Colorado Springs, 114 F.3d 1024, 1032, n.7 (10th Cir. 1997).  A reasonable person in Mr. Saenz's position would not have felt free to leave.  See Edwards, 242 F.3d at 934 ("An arrest occurs when the police use a show of official authority such that a reasonable person would have believed he was not free to leave.").  Having determined that Mr. Saenz was arrested when he was placed in handcuffs and led away by Officer Baca, the Court turns to consider whether the arrest was supported by probable cause.

---

[2]  This officer, Officer Swops, is not a defendant in this case.

Defendants assert that Officer Baca had probable cause to arrest Mr. Saenz for criminal damage to property, which is a fourth degree felony if the damage exceeds more than $1,000.  See NASA 1978, § 30-15-1 (1963).  [Doc 60 at 9]  Plaintiff responds that at the time of arrest, the arresting officer (1) did not know that the property had been damaged and (2) did not know whether the extent of the property damage was sufficient to establish a felony charge.  [Doc 88 at 26]  Defendants insist that Officer Baca had information relating to alleged property damage.  [Doc 93 at 2]  This information, however, was not revealed until after Officer Baca had already handcuffed Mr. Saenz and was leading him toward the police car.  [Id.]  See Phillips v. James, 422 F.3d 1075, 1081 (10th Cir. 2005) (observing that "the only factors that can reasonably be considered are those known to the officers prior to making the disputed decision").

From Officer Baca's testimony, at the time that he placed Mr. Saenz in handcuffs and led him away, Officer Baca knew that there had been a report of a fight, that Mr. Saenz would not respond to questions, and that Mr. Saenz was yelling.  Officer Baca further had a reasonable belief, based on his experience and Mr. Saenz's behavior, that Mr. Saenz was "on something."  Based on these facts, at the time that Mr. Saenz was arrested, Officer Baca did not have a reasonable belief that Mr. Saenz had damaged any property at all.  Nevertheless, a reasonable officer in Officer Baca's position would have had a reasonable belief that Mr. Saenz was violating the New Mexico criminal trespass statute.  See NASA 1978, § 30-14-1 (B) (1995); See Apodaca v. City of Albuquerque, 443 F.3d 1286, 1289 (10th Cir. 2006) ("All that matters is whether [the officer] possessed knowledge of evidence that

would provide probable cause to arrest her on *some* ground." (emphasis in original)).

In its entirety, Section 30-14-1(B) states that "[c]riminal trespass . . . consists of knowingly entering or remaining upon the unposted lands of another knowing that such consent to enter or remain is denied or withdrawn by the owner or occupant thereof."  In the present case, a call had been placed to dispatch reporting a fight at this address, the apparent property owner was on the deck and Mr. Saenz was on the lawn, and Mr. Saenz's was yelling and acting strangely.  These facts could lead a reasonable officer to conclude that Mr. Saenz did not have permission to be on the property at that time.  Put another way, Officer Baca could have reasonably believed that the criminal trespass statute was being violated in his presence.  See Tanberg v. Sholtis, 401 F.3d 1151, 1157 (10th Cir. 2005) ("Under New Mexico law, a police officer may make a warrantless arrest for a misdemeanor if he has probable cause to believe the offense occurred in his presence."); Romero v. Fay, 45 F.3d 1472, 1476 (10th Cir. 1995) (explaining that "[w]hen a warrantless arrest is the subject of a [Section] 1983 action, the defendant arresting officer is entitled to immunity if a reasonable officer *could* have believed that probable cause existed to arrest the plaintiff" (emphasis added) (internal quotation marks and citation omitted)).  The Court concludes that the undisputed material facts show that Mr. Saenz's arrest was supported by probable cause.  As a result, Plaintiff has not demonstrated that the Officer Defendants violated a clearly established constitutional right.  Accordingly, the Officer Defendants are entitled to qualified immunity as the complaint relates to the arrest.

**2.**     **Excessive Force**

Turning to Plaintiff's claim for excessive force, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). "The degree of physical coercion that law enforcement officers may use is not unlimited, however, and 'all claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard.'" Cortez, 478 F.3d at 1125 (quoting Graham, 490 U.S. at 395). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97.

In making the reasonableness determination, the Court balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Phillips, 422 F.3d at 1080 (quoting Graham, 490 U.S. at 396). While there is no "precise formula to apply," relevant factors to consider include (1) the severity of the crime at issue, (2) whether the suspect is actively resisting arrest or attempting to evade arrest by flight, and (3) whether the suspect poses an immediate threat to the safety of the officers or others. Phillips, 422 F.3d at 1080. Plaintiff makes two separate claims for excessive force, one claim relating to the facts surrounding the Officer Defendants' use of tasers and the other claim relating to the manner in which Mr. Saenz was restrained in the police vehicle.

At the outset, however, it is necessary to briefly divert in order to address Defendants' contention that the force used by the Officer Defendants was not applied in order to effectuate the arrest.  [Doc 93 at 6]  Specifically, Defendants argue that "[n]o force was used to effect Mr. Saenz' arrest" and that "[f]orce was not needed until he fought the officers' attempts to seat him in the police car."  [Id.]  This argument takes an excessively narrow view of the term "effect an arrest."  This Court has already determined that Mr. Saenz was under arrest at the time that Officer Baca placed him in handcuffs and led him toward the police car.  It does not necessarily follow, however, that the arrest was over at the time that it began—that the arrest was not still being "effected" when the Officer Defendants attempted to place Mr. Saenz in the police vehicle.

For support, Defendants cite Fisher v. City of Las Cruces, 584 F.3d 888 (10th Cir. 2009) and Cortez.  Neither case, however, limits the term "effect an arrest" to a single action on the part of the arresting officer.  Instead, the cases unremarkably state that "[i]f the plaintiff can prove that the officers used greater force than would have been reasonably necessary to effect a  lawful arrest, he is entitled to damages resulting from that excessive force."  Fisher, 584 F.3d at 893-94 (quoting Cortez, 478 F.3d at 11227).  The Court therefore finds that although Officer Baca arrested Mr. Saenz by placing him in handcuffs and leading him to the police vehicle, the arrest was still in the process of being "effected" when the Officer Defendants attempted to place Mr. Saenz in the vehicle and during the brief ride to the police station.  See Butler v. City of Norman, 992 F.2d 1053, 1054 (10th Cir. 1993) (acknowledging that the line between arrest an detention falls at some point between the

booking process and arraignment).

**a.**     **The Use of Tasers**

In order to evaluate whether the Officer Defendants' use of tasers was objectively reasonable, the Court turns to the Graham factors, the first of which involves the severity of the crime involved.  See Phillips, 422 F.3d at 1080.  As was explained earlier, at the time of arrest, a reasonable officer would only have had probable cause to arrest Mr. Saenz for criminal trespass.  In between the time that the arrest was initiated and the time that the force was applied, Sergeant Edmonson obtained information that Mr. Saenz was allegedly responsible for some property damage.  The record supports a conclusion that he communicated that information to Officer Baca.  [See Doc 89-6 at 1 (Edmonson's Report); Doc 88-4 at 7 (Baca's Deposition)]  Thus, at the time the tasers—the force—were deployed, a reasonable officer would also have had probable cause to arrest Mr. Saenz for criminal damage to property—which as has been explained, can be a felony under New Mexico law, depending on the extent of the damage.   See § 30-15-1.   Nevertheless, neither crime—trespass or property damage—can be said to be particularly severe.  Compare Walker v. City of Orem, 451 F.3d 1139, 1160 (10th Cir. 2006) (concluding that the theft of a vehicle and evading arrest were not "particularly severe") with Marquez v. City of Albuquerque, 399 F.3d 1216, 1221 (10th Cir. 2005) (determining that an officer's use of force was objectively reasonable in part because the officer reasonably believed that the suspect had committed an armed robbery).

The second Graham factor concerns whether the suspect actively resisted arrest or

attempted to evade arrest by flight.  It is undisputed that after Officer Baca and Mr. Saenz reached the police vehicle and Officer Baca attempted to place Mr. Saenz inside, Mr. Saenz began to resist.  The testimony shows that immediately before the Officer Defendants used their tasers, Mr. Saenz kicked his legs and wedged his shoulder in the door jamb, to avoid getting into the vehicle.  [Doc 88-4 at 10]  Plaintiff argues that Mr. Saenz did not resist arrest but instead simply "did not want to get into the back of the patrol car" and that his resistence was "passive."  For the purposes of this analysis, getting into the patrol car was a part of being arrested and by refusing to enter the vehicle, Mr. Saenz actively resisted arrest.  The undisputed evidence therefore demonstrates that Mr. Saenz resisted being put into the police car—resisted arrest immediately before the Officer Defendants deployed their tasers.

The Court next turns to the third <u>Graham</u> factor, in order to evaluate whether Mr. Saenz posed an immediate threat to the Officer Defendants' safety at the relevant times. With regard to the taser allegations, the following facts are undisputed.  Officer Baca testified that when he tried to put Mr. Saenz into the police vehicle, Mr. Saenz wedged his shoulder and neck into the door jamb to keep himself out of the vehicle and he started yelling incoherently.  [Doc 88-4 at 8]  Officer Baca raised his voice and commanded Mr. Saenz to enter the vehicle.  [<u>Id.</u>]  Mr. Saenz kept yelling and started kicking his legs.  [<u>Id.</u>]  When Mr. Saenz raised his leg to kick, Officer Baca pushed him into the car.  [<u>Id.</u>]  Mr. Saenz ended up sitting in the car, facing Officer Baca, with his legs outside the vehicle.  [<u>Id.</u>]  His hands were still cuffed behind his back.  [<u>Id.</u>]  Mr. Saenz leaned back on his cuffed hands and continued to kick his legs.  [<u>Id.</u> at 9]  Officer Baca continued to yell at Mr. Saenz, and

hearing the commotion, Sergeant Edmonson and Officer Dominguez came to assist.  [Id.]
Officer Dominguez went to the other side of the vehicle, opened the door, grabbed Mr. Saenz
by the torso, and pulled Mr. Saenz into the car from behind.  [Id.]  Officer Baca
unsuccessfully attempted to close the vehicle door.  [Id.]  Mr. Saenz rolled onto his stomach
and continued to kick from the knees, with his ankles remaining outside the car.  [Id.]

There is some inconsistency between the officers' testimony regarding the next
sequence of events.  Officer Baca testified that Sergeant Edmonson retrieved a set of
shackles from his own vehicle and dodged Mr. Saenz's kicks in order to remove his boots.
[Id.]  Officer Baca further testified that Sergeant Edmonson told Mr. Saenz that if he did not
calm down, "he was going to be tasered."  [Id.]  Sergeant Edmonson reported that he
attempted to remove Mr. Saenz's boots and that Mr. Saenz continued to kick.  [Doc 89-6 at
1]  At that point, according to Sergeant Edmonson's report, he ordered the other officers to
use their tasers.  [Id.]  Sergeant Edmonson stated that the tasers seemed to have little effect
on Mr. Saenz and that after trying again, he was able to remove the boots and shackle Mr.
Saenz's feet, all the while dodging the kicks.  [Id.]  Officer Dominguez testified that he could
not remember whether the boots were off and the shackles on before or after Sergeant
Edmonson ordered the use of the tasers.  [Id.]

The parties additionally dispute how many times the Officer Defendants used their
tasers on Mr. Saenz.  Defendants contend that Officer Dominguez testified that he initially
"bump tased" Mr. Saenz two or three times.  [Doc 60 at 4]  Then, after Mr. Saenz continued
to kick, Officer Dominguez deployed his taser at Mr. Saenz's back, and the taser "cycled"

two or three times, again, with little effect.  [Id.]  Officer Dominguez's deposition testimony supports the statements regarding the "bump tase," but nowhere in his testimony does he refer to the taser "cycling" two or three times.  [See Doc 60-2 at 9-15]  Officer Dominguez referred to two "darts" having been deployed, but he did not testify about the number of cycles that Mr. Saenz endured.  Officer Baca testified he deployed his taser from a distance, the probes went into Mr. Saenz's body, and he cycled the taser two to three times.  [Doc 88-4 at 10-11]

Plaintiff, on the other hand, has provided the testimony of a taser instructor, who reviewed the printouts from the involved tasers.  [Doc 88-10 at 3, 7, 12-13]  That witness testified that Officer Baca's taser "cycled" ten times on the night in question and that Officer Dominguez's taser "cycled" eleven times.  [Id. at 7-8]  The witness further explained that "[o]nce the darts are actually in the subject, you can deploy it or actually initiate another charge[,] and you can pull the trigger and give the subject another cycle."  [Id. at 4]  Defendants counter that "[n]one of the witnesses . . . have testified that the officers used their tasers anywhere near the number of times the computer printout reports that the tasers were cycled.  [Doc 93 at 4]  The taser witness, however, gave evidence that the tasers were cycled more times than the Officer Defendants have admitted.  Defendants have not argued that the testimony of the taser witness and the evidence from the printouts are not admissible—simply that none of the eyewitnesses have supported the data retrieved from the taser units.

Defendants further argue that the autopsy evidence matches the Officer Defendants'

testimony in this regard.  [Id.]  Specifically, Defendants contend that there is no physical evidence that was found on or in Mr. Saenz's body to support the assertion that the tasers were cycled as many times as alleged by Plaintiff.  The testimony of Defendants' own medical expert, however, was that there is no way to tell by looking at a taser wound how many times the taser cycled while the probes were embedded.  [Doc 89-4 at 3]  This conflict in the interpretation of the available evidence is certainly material—Defendants argue that "the evidence shows that tasers were used on Mr. Saenz's body, two or three times," while Plaintiff has provided evidence to show that Mr. Saenz endured over twenty cycles of electricity from the tasers.  Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Mr. Saenz was subject to over twenty cycles from the tasers.

Further, viewing all of these facts in the light most favorable to Plaintiff, at the time that Mr. Saenz was tased, he was lying face down in the back seat of a police vehicle, with his hands cuffed behind his back, his shoes off, and his legs shackled together.  The testimony is unequivocal that Mr. Saenz was yelling and kicking his legs.  But a reasonable jury could conclude that under these circumstances, yelling and kicking from the knee did not pose an immediate threat to officer safety.  As a result, the third Graham factor—the immediate threat to officer safety—weighs in Plaintiff's favor.

Having reviewed the totality of the circumstances, this Court cannot say as a matter of law that the amount of force alleged to have been used in effecting the arrest of Mr. Saenz was permissible and objectively reasonable in light of the particular facts and circumstances

confronting the Officer Defendants in this case. And as such, the Court cannot conclude that the protections of qualified immunity should apply. See Cortez, 478 F.3d at 1128 ("Should the officers move for qualified immunity on an excessive force claim, a plaintiff is required to show that the force used was impermissible (a constitutional violation) and that objectively reasonable officers could not have not thought the force constitutionally permissible (violates clearly established law)."). The crimes for which the Officer Defendants had probable cause to arrest were not severe, and a reasonable jury could conclude that there was no immediate threat to officer safety. Although it is undisputed that Mr. Saenz was kicking and yelling, a reasonable jury could further conclude that the Officer Defendants responded to the kicking by applying over twenty cycles from two tasers to a barefoot suspect in leg shackles, who was handcuffed on his stomach in the back of a police vehicle.

It is well established that the reasonableness consideration must "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. In the present case, however, the evidence, when viewed in a light most favorable to Plaintiff, does not support the conclusion that such circumstances were present. To the contrary, rather than be forced to make a split-second judgment under rapidly evolving circumstances, Sergeant Edmonson took the time to retrieve the leg shackles from his vehicle. Moreover, immediate action was not necessary because Mr. Saenz was restrained in Officer Baca's vehicle and could not escape. See Cortez, 478 F.3d at 1131 ("[T]he officers involved should have known that they were

permitted to use only as much force as was necessary to secure their own safety and maintain the status quo."). Because the Court cannot say as a matter of law that the Officer Defendants are entitled to the protections of qualified immunity with respect to their use of tasers, Defendants' summary-judgment motion is denied on this point.

**b.** **Physical Restraint**

Plaintiff also contends that the Officer Defendants used excessive force in the manner in which Mr. Saenz was restrained in the back of the police vehicle for the brief ride to the station. [Doc 88 at 39] Plaintiff asserts that after Mr. Saenz was tasered, the Officer Defendants managed to close the doors to the vehicle and that Officer Dominguez rode to the police station in the back seat with Mr. Saenz. [Id. at 40] During the ride, Plaintiff states that "Defendant Dominguez sat on [Mr. Saenz's] neck, back, and/or buttocks . . . all the while pulling [Mr. Saenz's] shackled ankles up towards his cuffed wrists." [Id.] This restraint, Plaintiff argues, put Mr. Saenz at an unacceptably high risk for positional asphyxia. Defendants argue in response that Officer Dominguez simply rode in back with Mr. Saenz, "holding his legs and keeping off his back" and that there is no evidence that Mr. Saenz died as a result of positional asphyxia. [Doc 60 at 10]

Also related to the physical restraint claim is *Defendants' Motion for Summary Judgment—Cause*. [Doc 61] In that Motion, Defendants further contend that Plaintiff cannot establish that the Officer Defendants' actions caused the death of Mr. Saenz. Specifically, Defendants state that Plaintiff's expert, Dr. Nine, did not apply a reliable methodology in order to reach his conclusions regarding Mr. Saenz's cause of death. As a result, Defendants

maintain, Plaintiff cannot establish damages.  The parties presented argument on these issues—the question of excessive force as related to physical restraint and the question of causation—at the hearing.  The Court determined that a <u>Daubert</u> is necessary in order to evaluate the admissibility of Dr. Nine's proposed testimony.

As a result, the Court defers ruling definitively on the physical restraint aspect of *Defendants' Motion For Summary Judgment—Liability* and on the entirety of *Defendants' Motion For Summary Judgment—Cause* until such time as a sufficient factual record can be developed.

**b.**    **Remaining Claims**

Plaintiff has also made claims for supervisory liability under Section 1983, for individual, supervisory, and municipal liability under the NMTCA, and for violations of Section 504 of the Rehabilitation Act.  Defendants have correspondingly moved for summary judgment on these claims.  With the exception of Plaintiff's claims for false imprisonment and false arrest under the NMTCA, the Court defers ruling on Defendants' motion with respect to these allegations.  The claims for false imprisonment and false arrest are dismissed pursuant to the Court's ruling that the Officer Defendants had probable cause to arrest Mr. Saenz.  <u>See Santillo v. N.M. Dep't of Pub. Safety</u>, 2007-NMCA-159, ¶ 12, 143 N.M. 84, 183 P.3d 6 ("The tort of false imprisonment occurs when a person intentionally confines or restrains another person without consent and with knowledge that he has no lawful authority to do so.  A false arrest is merely one way of committing false imprisonment.  An officer who has probable cause to arrest a person cannot be held liable for false arrest or

imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." (internal citations omitted)).

## III.   CONCLUSION

IT IS THEREFORE ORDERED that *Defendants' Motion For Summary Judgment—Liability* [Doc 60] is granted in part, denied in part, and deferred in part. The Officer Defendants are entitled to qualified immunity with regard to the arrest, and the related claims for false arrest and false imprisonment are also dismissed. Plaintiff may proceed with the excessive force claim as it relates to the use of tasers. The Court defers ruling on the question of qualified immunity as it relates to the use of physical restraint in the back of the police car, as well as the viability of the remaining municipal, supervisory, and individual capacity claims. The Court further defers ruling on *Defendants' Motion For Summary Judgment—Cause* [Doc 61] until such time as the Court convenes a Daubert hearing in order to assess the admissibility of Plaintiff's expert witness.

SO ORDERED this 6th day of May, 2010, in Albuquerque, New Mexico.


M. CHRISTINA ARMIJO
United States District Judge